IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

CHAD EDWARD SPIERS                                                                    PLAINTIFF

V.                                                               CIVIL ACTION NO. 5:06cv83-MTP

UNKNOWN JONES, ET AL.                                                              DEFENDANTS

## OPINION AND ORDER

THIS MATTER is before the court on the Defendants' Motion for Summary Judgment [35]. The court, having considered the submissions of the parties and the applicable law, finds that the Motion [35] should be GRANTED in part and DENIED in part.

FACTUAL BACKGROUND

Plaintiff Chad Edward Spiers, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on May 31, 2006, against Defendants Chaplin Jones, Warden Dolan Waller, and Warden J. Banks. Plaintiff is currently incarcerated at the Wilkinson County Correctional Facility ("WCCF"), after having been convicted of armed robbery in Harrison County. Through his complaint and his sworn testimony during the *Spears* hearing,[1] Plaintiff alleges that Defendants violated his First Amendment right to freedom of religion, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. Specifically, Plaintiff alleges

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Hurns v. Parker*, 165 F.2d 24, No. 98-60006, 1998 WL 870696, at *1 (5th Cir. Dec. 2, 1998); *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that plaintiff's claims and allegations made at *Spears* hearing supersede claims alleged in complaint). Plaintiff's *Spears* hearing occurred on April 28, 2008. *See* Transcript [41].

that Defendants are interfering with and/or preventing his rights to properly practice the Wicca[2] religion and to be recognized as a Wiccan.[3] Plaintiff seeks the following injunctive relief: to be recognized by Defendants as a Wiccan; for Defendants to arrange for Wiccan or Pagan programs or services at WCCF; and to allow Plaintiff to purchase religious items from an outside source. Plaintiff also seeks compensatory damages for court costs and nominal damages in the amount of $1.00 against each Defendant. *See* Complaint [1] at 9-10.

On June 16, 2008, Defendants filed their Motion for Summary Judgment [35]. Plaintiff filed his Response [37] and Memorandum [39] in opposition to Defendants' Motion on June 30, 2008. The parties subsequently filed various replies and rebuttals in support of their positions. *See* Defendants' Reply [40], Plaintiff's Response [42], and Defendants' Rebuttal [43].

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to Plaintiff, Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this

---

[2] According to Plaintiff, Wicca is a pagan, nature-based religion that honors both a god and goddess. *See* Plaintiff's Complaint [1] at 5.

[3] On February 29, 2008, Plaintiff filed a Motion for a Preliminary Injunction [21], claiming that on February 16, 2008, Defendants and/or their colleagues confiscated his religious books without cause and refused to return the books. The court denied the motion based, in part, on Defendants' representation in their Response [32] that Plaintiff could submit a written request to Angie Jones to exchange whichever books he would like as long as the number of books in his cell did not exceed ten. *See* Order [34]. The court now considers this issue moot.

court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304.

<u>Violation of First Amendment</u>

Plaintiff alleges that Defendants violated his First Amendment right to freedom of religion. Specifically, Plaintiff alleges that Defendants ignored his requests to purchase religious items in order to practice the Wicca religion and to be recognized as a Wiccan. Plaintiff claims he first requested permission to purchase religious items from Warden Waller and Chaplin Jones in December 2005. Plaintiff subsequently met with Chaplin Jones during the Spring or Summer of 2006,[4] and the parties reviewed a catalog of the religious items Plaintiff wanted to purchase. Defendants maintain that certain items were approved for purchase after the meeting; Plaintiff disputes this. *See* Ex. A to Motion [36-2]; Response [37] at 3.

It is undisputed that Chaplin Jones and Emma Taplin, WCCF employee, met with

---

[4]The parties disagree as to whether this meeting took place in April or July 2006.

Plaintiff on July 18, 2008, and approved the purchase of the following items: book of shadows, prayer rug, one-inch diameter crystal, tarot card deck, and essential oils. *See* Rebuttal [43]. Indeed, the approved list of items is signed and dated by Plaintiff. *See* Ex. A to Rebuttal [43-2]. The only item that was not approved was the religious symbol–a medallion that could be worn around Plaintiff's neck to symbolize his faith– because it was made of metal and posed a security threat. *See* Response [42]; Rebuttal [43].

This court reviews Plaintiff's First Amendment claim under the standard set forth by the Supreme Court in *Turner v. Safley*: whether the regulation is "reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987); *see also Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008). In determining the reasonableness of the prison regulation, we consider the following four factors:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."

*Mayfield*, 529 F.3d at 607 (quoting *Turner*, 482 U.S. at 89-91). The *Turner* standard "also includes a neutrality requirement-'the government objective must be a legitimate and neutral one ... [and] [w]e have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion.'" *Mayfield*, 529 F.3d at 607 (quoting *Turner*, 482 U.S. at 90).

"A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with

preservation of the inmate's right." *Schmidt v. Johnson*, 75 Fed. Appx. 218, 220 (5th Cir. 2003). Moreover, prison officials are afforded great deference in making decisions regarding jail security. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

Considering the *Turner* factors set forth above, this court concludes that the regulation requiring prior approval for the purchase of religious items, and the Defendants' decision to deny approval for the "religious symbol" were "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89. Given the deference owed to prison officials' decisions regarding security, the court finds that the Defendants' fears regarding the metal symbol posing a security threat represent legitimate penological interests and that the denial of approval for the symbol is rationally related to that interest. *Mayfield*, 529 F.3d at 610-11. Moreover, there is no credible evidence to suggest that the requirement of prior approval for religious items and the decision to deny metal religious symbols is not neutral. In any event, the court concludes that the denial of the symbol will not prevent Plaintiff from exercising his religious beliefs.

Further, although the parties dispute the dates and procedure regarding Plaintiff's change of religion form, it is undisputed that both parties agree that Plaintiff is a Wiccan and recognize him as such. *See* Response [37] at 4; Affidavit of Chaplin Jones [36-2]. In any event, Defendants have no duty under the First Amendment to "recognize" Plaintiff as a Wiccan. *See Howard v. Wilson*, 176 Fed. Appx. 468, 469 (5th Cir. 2006).

For the reasons set forth above, Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claims.

<u>Violation of Equal Protection Clause</u>

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth

Amendment. Specifically, Plaintiff alleges that there are no religious services or programs for Wiccan inmates at WCCF, while there are such programs for Christians and other "mainstream" religions, and those inmates are allowed to purchase religious items for their religions whereas the Wiccans are not.

In order to establish a violation of the Equal Protection Clause, Plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Schmidt,* 75 Fed. Appx. at 219 (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir.2001)). A "[d]iscriminatory purpose in an equal protection context implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Schmidt,* 75 Fed. Appx. at 220 (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir.1995)).

As set forth above, the majority of the religious items Plaintiff requested to purchase were ultimately approved. The evidence reflects that MDOC policy requires prior approval of the purchase of religious items from an outside source due to security reasons. *See* Affidavit of Warden Vines [36-3]. The only item that was not approved was the religious symbol–a medallion that could be worn around Plaintiff's neck to symbolize his faith– because it was made of metal and posed a security threat. *See* Response [42]; Rebuttal [43]. Plaintiff has failed to offer credible evidence to suggest that the requirement of prior approval for religious items only applies to Wiccans, and has failed to establish that Defendants' reason for denying the purchase of the metal medallion stemmed from a discriminatory intent. *See Schmidt,* 75 Fed. Appx. at 219-20. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim

that the policy of requiring prior approval of religious items and the denial of the metal medallion violated the Equal Protection Clause.

The parties dispute whether Plaintiff actually requested Wicca services to be held at WCCF. *See* Ex. A to Motion [36-2]; Declaration [37] at ¶ 16. In his affidavit, Chaplin Jones states that Plaintiff has never requested Wiccan religious services. *See* Ex. A to Memorandum [36-2]. Yet, in his sworn declaration, Plaintiff claims he did request Wicca services. *See* Declaration [37] at ¶ 16; [37-2] at ¶ 3. While the court recognizes that "the Fourteenth Amendment does not demand that every religious sect or group within a prison . . . have identical facilities or personnel[,]" the Defendants have offered no reason as to why Wicca services or programs are not offered at WCCF. *See Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007) (internal citations and quotations omitted). Instead, they merely deny that Plaintiff has made a request for such services.

Drawing all inferences in favor of the non-moving party, the court concludes that genuine issues of material fact exist as to whether the Defendants' denial of Plaintiff's request for Wicca services or programs violates the Equal Protection Clause. Accordingly, summary judgment on this claim must be denied.

<u>Violation of RLUIPA</u>

Plaintiff alleges that Defendants violated the RLUIPA, 42 U.S.C. § 2000cc. Specifically, Plaintiff alleges that Defendants violated this Act by placing substantial burdens on him and his religious practices. RLUIPA generally provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

8

> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

In evaluating this claim, the court considers whether the burdened activity is a "religious exercise," and whether that burden is "substantial." *Mayfield,* 529 F.3d at 613. Plaintiff bears the burden of establishing "that the government practice complained of imposes a 'substantial burden' on his religious exercise." *Adkins v. Kaspar*, 393 F.3d 559, 567, n.32 (5th Cir. 2004) (citing 42 U.S.C. § 2000cc-2). In *Adkins*, the Fifth Circuit stated that

> for purposes of applying the RLUIPA in this circuit, a government action or regulation creates a "substantial burden" on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. And, in line with the foregoing teachings of the Supreme Court, the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Adkins*, 393 F.3d at 570 (footnotes omitted).

As the majority of the religious items Plaintiff requested to purchase have been approved, the only remaining alleged burdened activities are the absence of Wicca services at WCCF and the denial of Plaintiff's request for a religious symbol. While the court agrees that Plaintiff's request to purchase a religious symbol (medallion) and wear it around his neck qualifies as a

"religious exercise," it concludes that Plaintiff has failed to meet his burden in proving that Defendants' disapproval of the medallion imposes a substantial burden on his ability to exercise his religious beliefs. *See Adkins*, 393 F.3d at 567, n.32. Even assuming Plaintiff had met his burden, the Defendants have set forth a compelling government interest– prison security– and prohibiting the purchase of the metal medallion appears to be the least restrictive means of furthering that interest. *See Baranowski,* 486 F.3d at 125 (internal citations and quotations omitted) (stating that "Courts should apply the compelling governmental interest standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources").

The court also concludes that Plaintiff's request for Wicca religious services to be held at the facility constitutes a "religious exercise" under RLUIPA. However, the court concludes that Plaintiff has raised a genuine issue of material fact as to whether Defendants' disapproval of the religious services imposes a substantial burden on his ability to exercise his religious beliefs. *See Adkins*, 393 F.3d at 567-70; *Mayfield,* 529 F.3d at 612-15. As stated above, Defendants do not offer any explanation for the denial of Wicca services at WCCF; they merely deny that Plaintiff has made a request for such services. Accordingly, summary judgment on this claim must be denied.

  Compensatory Damages

To the extent Plaintiff seeks compensatory damages for the claims alleged above, such claims are subject to dismissal because Plaintiff suffered no physical injury as a result of the alleged violations. The Prison Litigation Reform Act, to which this action is subject, provides

that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury.*" 42 U.S.C. § 1997e(e) (emphasis added). As no such injury is alleged as a result of the alleged violations, any claim for compensatory damages must be dismissed. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [35] be GRANTED in part and DENIED in part as set forth above.

SO ORDERED this the 26th day of January, 2009.

s/ Michael T. Parker
United States Magistrate Judge